IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>LEANDRO RAFAEL RODRIGUEZ RAMOS and NELIMAR REYES TORRES,<br><br>Debtors | Case No. 10-08187 (MCF)<br><br>Chapter 13 |
| LEANDRO RAFAEL RODRIGUEZ RAMOS and NELIMAR REYES TORRES,<br><br>Plaintiffs,<br><br>v.<br><br>BANCO POPULAR DE Puerto Rico,<br><br>Defendant. | Adv. No. 11-00268 (MCF) |

**OPINION AND ORDER**

Before the court is the central issue of whether defendant Banco Popular de Puerto Rico (hereinafter "BPPR") holds a valid mortgage on plaintiff Leandro Rafael Rodriguez Ramos and Nelimar Reyes Torres' real property under Puerto Rico's "Act to Streamline the Property Registry" enacted on December 27, 2010, 2010 P.R. Laws No. 216 (in Spanish titled "Ley para Agilizar el Registro de la Propiedad," 30 L.P.R.A. §§ 1821-1831, hereinafter referred to as "Law 216").[1]

---

[1] Unless otherwise indicated, all statutory references to Law 216 are from the English slip translation, 2010 P.R. Laws No. 216.

1

Both parties filed cross motions for summary judgment.[2]  The Chapter 13 Trustee stated his position with respect to the motions for summary judgment which BPPR opposed and Debtors replied.[3]

After considering the motions and the arguments presented at the oral hearing, the Court grants in part and denies in part the cross motions for summary judgment, for the reasons set forth below.

## I.    JURISDICTION AND VENUE

The court has jurisdiction to hear this case, pursuant to 28 U.S.C. §§ 1334(b) & 157(a) and the general order of the United States District Court dated July 19, 1984 (Torruellas, C.J.). This is a core proceeding, pursuant to 28 U.S.C. § 157(b).  Venue lies in this district, pursuant to 18 U.S.C. §§ 1408 & 1409.

## II.   UNDISPUTED FACTS

Based upon the parties' Statement of Uncontested Facts, exhibits thereto, the pleadings and the docket entries of both the adversary and bankruptcy cases, the uncontested material facts are as follows:

1.   On June 26, 2008, the Debtors acquired a real property located in Bayamon, Puerto Rico from Milagros Torres Ortiz ("Torres Ortiz"), through the purchase and sale

---

[2] Dockets Nos. 15; 16, 23, 24, 25, 31 and 35.
[3] Dockets Nos. 36, 38 and 41.

2

deed number 17 before the Notary Public Ignacio Villamarzo Garcia (hereafter "Purchase Deed").[4]

2.  On the same date, Debtors executed mortgage deed number 18 before the same notary public to guarantee a mortgage note in the principal amount of $108,605.00 with interest at the rate of 6% per annum in favor of RG Premier Bank (hereafter "Mortgage Deed").[5]

3.  BPPR is now the current holder of the aforementioned mortgage note.[6]

4.  On July 7, 2008, both the Purchase Deed and the Mortgage Deed were presented by fax to the Registry of Property, Bayamon Section 1 for recordation purposes at entry number 1003 and entry number 1005, respectively, of Daily Entries Book number 1276.[7]

5.  These presentation entries expired ("caducaron" in Spanish) on August 1, 2008, because certified copies of both deeds were not physically delivered to the Registry of Property in accordance with Puerto Rico law.[8]

---

[4] BPPR's Statement of Uncontested Facts ¶ 1 (Docket No. 15); Opposition to BPPR's Statement of Uncontested Facts ¶ 1 (Docket No. 24); Amended Complaint ¶ 10 (Docket No. 12); Answer to the Amended Complaint ¶ 10 (Docket No. 17).
[5] Amended Complaint ¶ 10 (Docket No.12); Answer to the Amended Complaint ¶ 10 (Docket No. 17).
[6] BPPR's Statement of Uncontested Facts ¶ 8 (Docket No. 15); Debtors' Statement of Uncontested Facts ¶ 8 (Docket No. 24).
[7] BPPR's Statement of Uncontested Facts, Exhibit 1, Title Search dated January 12, 2012 (Docket No. 15).
[8] Id.

3

6. The Mortgage Deed was presented for a second time to the Registry of Property on November 6, 2008, at entry number 1053 of the Daily Entries Book number 1278.[9]

7. The Purchase Deed was never presented again to the Registry of Property.[10]

8. The title of the property has not been recorded in the name of the Debtors.[11]

9. Torres Ortiz appears as the registered title owner of the subject property.[12]

10. On September 4, 2010, approximately two (2) years after the Mortgage Deed was presented in the Registry of Property, the Debtors filed a voluntary petition under chapter 13 of the Bankruptcy Code.[13]

11. By virtue of the enactment of Law 216 on December 27, 2010, the Registrar recorded the Mortgage Deed in the Registry of Property on March 21, 2011.[14]

---

[9] Id.; Amended Complaint ¶ 12 (Docket No. 12); Answer to the Amended Complaint ¶ 12 (Docket No. 17).

[10] Amended Complaint ¶ 12 (Docket No. 12); Answer to the Amended Complaint ¶ 12 (Docket No. 17).

[11] Answer to the Amended Complaint ¶ 9 (Docket No. 17).

[12] Amended Complaint ¶ 9 (Docket No. 12); Answer to the Amended Complaint ¶ 9 (Docket No. 17).

[13] Amended Complaint ¶ 8 (Docket No. 12); Answer to the Amended Complaint ¶ 8 (Docket No. 17).

[14] Certification from the Registry of Property issued on March 21, 2011 (Docket No. 22, Debtors' Exhibit 1).

12.  The deadline to file unsecured claims in the bankruptcy case of the Debtors, Case No. 10-08187, was January 4, 2011.

13.  On November 5, 2010, the court confirmed the plan dated October 21, 2010, without an objection from BPPR.[15]

14.  On August 19, 2011, BPPR filed proof of claim number 4-1 as secured in the bankruptcy case for $107,480.82, including $892.24 for pre-petition arrears.[16]

15.  The confirmed plan does not provide for BPPR's secured proof of claim.[17]

### III. PROCEDURAL HISTORY

On September 16, 2011, the Debtors objected to BPPR's claim, challenging its secured status and arguing that BPPR does not have evidence to support the perfection of security due to the lack of successive chain of title in the Registry of Property.  Debtors assert that BPPR's claim is consequently unsecured and it is time barred because it was filed after the bar date for unsecured claims.[18]

On December 1, 2011, BPPR filed a reply to the objection to claim, alleging that its Mortgage Deed was recorded by virtue of

---

[15] Docket No. 24 in Case No. 10-08187.
[16] BPPR's Statement of Uncontested Facts ¶ 13 (Docket No. 15); Debtors' Statement of Uncontested Facts ¶ 13 (Docket No. 24).
[17] Amended Chapter 13 Payment Plan dated October 21, 2010 (Docket No. 18 in Case No. 10-08187).
[18] Docket No. 31 of Case No. 10-08187.

5

Law 216, thereby making BPPR a secured creditor.[19]

On December 16, 2011, Debtors filed the instant adversary proceeding asserting the following four causes of action against BPPR: 1) challenging the recordation of the Mortgage Deed as a voidable transfer and violation of the automatic stay; 2) challenging the recordation of the Mortgage Deed as a voidable preferential transfer; 3) BPPR's unsecured claim should be disallowed in its entirety because it was filed after the bar date for filing unsecured claims; and 4) BPPR's should be imposed sanctions, fees and costs for filing a false secured claim.[20]

At the hearing to consider the cross motions for summary judgment, the parties submitted their arguments to the consideration of the court.[21]

## IV.   DISCUSSION

By agreement of the parties,[22] this matter is appropriate for summary judgment disposition as there are no material facts in dispute and one of the parties is entitled to judgment as a matter of law, pursuant to Fed.R.Civ.P. 56, as made applicable to these proceedings by virtue of Fed.R.Bankr.P. 7056. Celotex v. Catrett,

---

[19] Docket No. 37 of Case No. 10-08187.  The objection to claim was essentially held in abeyance pending resolution of the adversary proceeding.
[20] Amended Complaint (Docket No. 12).
[21] Minutes of Hearing held on January 31, 2013(Docket No. 47).
[22] Id.

477 U.S. 317 (1986) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

### A. PARTIES' POSITION ON LIEN STATUS

Debtors challenge BPPR's status as a secured creditor because BPPR failed to present the Purchase Deed along with the presentation of the Mortgage Deed in the Registry of Property before the commencement of the bankruptcy case.  Debtors argue that the registration of the Mortgage Deed is invalid under Article 57 of the Puerto Rico Mortgage Act of 1979, P.R. Laws Ann. tit. 30, § 2260, because there is a lack of successive chain of title in the Registry of Property (in Spanish "tracto registral"). In other words, without the presentation of the Purchase Deed, the real property cannot be encumbered by the Debtors through the Mortgage Deed because the registered owner is Torres Ortiz and she did not execute the Mortgage Deed.  To validly perfect the Mortgage Deed, Debtors claim that prior to the commencement of the bankruptcy case BPPR had to present the Purchase Deed to establish that Debtors had the right to encumber the real property in question as required by Puerto Rico Mortgage Law.

BPPR counters that it has a secured claim because the Mortgage Deed was presented to the Registry of Property before the filing of the petition and the Mortgage Deed was recorded by virtue of Law

7

216. BPPR argues that Law 216 allows for the automatic inscription of documents pending recordation before the Registry of Property as of April 30, 2010.  Since BPPR's Mortgage Deed had been presented in 2008 and was pending recordation as of April 30, 2010, it was automatically recorded by virtue of Law 216.  BPPR believes that the fact that the Purchase Deed was unrecorded does not affect the validity of the lien given the provisions of Law 216.  In addition, BPPR argues that Debtors are the owners of the property, even if the property is not registered in their names.  So in the bank's view, the lack of successive chain of tile is irrelevant under Law 216.[23]

Debtors, on the other hand, argue that Law 216 creates a presumption of validity but said presumption may be rebutted. Debtors contend that they have rebutted the presumption of validity of the mortgage because there is a missing link in the successive chain of title, thereby invalidating the recordation of the Mortgage Deed.

BPPR concedes that lack of chain of title would have resulted in a finding of error by the Registry of Property.[24]  However, it would have sixty (60) days to correct the error from its notification by simply presenting the Purchase Deed in the Registry of Property. With the correction, the Mortgage Deed would have

---

[23] BPPR's Motion for Summary Judgment at 3, 11 and 19 (Docket No. 16).
[24] BPRR's Opposition to the Trustee's Motion at 9 (Docket No. 38).

preserved its position in the Registry and would have been retroactively recorded as of the date of its presentation.

The Trustee argues that the filing of the bankruptcy petition precludes the correction of the chain of title defect.  The Trustee believes that BPPR has not demonstrated that post-petition perfection of its claim is permissible under the exception established by 11 U.S.C §§ 362(b)(3) and 546(b).[25]

### B.  SECTIONS 362(b)(3) AND 546(b)(1)(A)

One of the fundamental protections afforded a debtor in bankruptcy is the automatic stay.  It provides the debtor a "breathing spell" from creditors. 3-362 COLLIER ON BANKRUPTCY ¶ 362.03 [hereinafter Collier]; H.R. Rep. No. 95-595, 95th Cong. 1st. Sess. 340-342 (1977); S. Rep. N. 989, 95th Cong. 1st Sess. 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 6296-97. It bars a wide range of creditor activities against a debtor to collect, sue or foreclose, including "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). See also 11 U.S.C. § 362(a)(5)("any act to create, perfect, or enforce against property of the debtor….").

---

[25] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").  Trustee's Motion to Comply with Court Order (Docket No. 34).

However, the automatic stay is not without limits.  There are exceptions to the automatic stay that are listed in § 362(b), which are to be read narrowly.  11 U.S.C. § 362(b)(1)-(28); Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n, 997 F.2d 581 (9th Cir. 1993).  One of the exceptions, pertinent here, § 362(b)(3) provides that the automatic stay does not extend to:

> any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of [the Bankruptcy Code] or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title.

11 U.S.C. § 362(b)(3).

To be eligible for this exception, BPPR has to satisfy three requirements:  "there must be (1) an 'act to perfect' (2) an 'interest in property' (3) under circumstances in which the perfection-authorizing statute fits within the contours of section 546(b)(1)(A)." 229 Main St. Ltd. P'ship v. Massachusetts Dept. of Envtl. Protection (In Re 229 Main St. Ltd. P'ship), 262 F.3d 1, 4 (1st Cir. 2001).  Section 362(b)(3)does not create new rights or interests for the creditor. "Instead, it merely permits perfection, or maintenance or continuation of perfection, free of the automatic stay that would otherwise be applicable, under circumstances in which the creditor's action would be effective against a trustee."

10

 3 Collier ¶ 362.05[4].

     "While section 362(b)(3) limits the automatic stay, its companion statute, Section 546(b), limits the debtor's power to avoid statutory liens under the so-called strong arm provision."[26] Soto-Rios v. Banco Popular de P.R., 662 F.3d 112, 116 (1st Cir. 2011). Once a bankruptcy petition is filed, the bankruptcy trustee (or the debtor here) is vested with the authority as a hypothetical bona fide purchaser of real property to avoid any transfer of the property or obligation of the debtor to the extent allowed under state law.

     Section 546(b)(1)(A) serves to "protect, in spite of the surprise intervention of a bankruptcy petition, those whom State law protects by allowing them to perfect their liens as of an effective date that is earlier than the date of perfection." Perez Mujica v. FirstBank (In re Perez Mujica), 457 B.R. 177 (Bankr. D.P.R. 2011)(Lamoutte, J.), aff'd, --- F. Supp.2d ---, 2013 WL 1408766(D.P.R. April 9, 2013)(Dominguez, J.) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 86-87 (1978), reprinted in App. Pt. 4(e)(i); H.R. Rep. No. 595, 95th Cong., 1st Sess. 371-372 (1977), reprinted in App. Pt. 4(d)(i)).

> Thus, simply stated, if a creditor
> possesses a prepetition interest in
> property, and state law establishes
> a time period for perfection of a

---

[26] The other companion statute, § 547(e)(2)(A), is not pertinent to this case.

> lien based upon that interest, the 'lien does not lose its preferred standing by reason of the fact that it [is] not perfected until after the commencement of a bankruptcy' so long as it is perfected within the time period established by state law.

Perez Mujica, 457 B.R. at 185(citing Lincoln Sav. Bank, FSB v. Suffolk Cnty Treasurer (In re Parr Meadows Racing Ass'n), 880 F.2d 1540, 1546 (2d Cir. 1989), cert. denied, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) (quoting Poly Indus., Inc. v. Mozley, 362 F.2d 453, 457 (9th Cir. 1966)).

For a creditor to enjoy this haven from the trustee's avoiding powers: three elements must be met: "(1) the creditor must act pursuant to a law of general applicability; (2) that law must allow the creditor to perfect an interest in property; and (3) such perfection must be effective against previously acquired rights in the property."  229 Main St., 262 F.3d at 10. "The gist of section 546(b)(1)(A) is that 'the filing of a bankruptcy petition does not prevent the holder of an interest in property from perfecting its interest if, absent the bankruptcy filing, the interest holder could have perfected its interest against an entity acquiring rights in the property before the date of perfection.'"  Id. at 12 (quoting 5 Collier on Bankruptcy ¶ 546.03[2][a]).

1.    Interest in Property

Applying these parameters to the case at bar, both §§ 362(b)(3) and 546(b)(1) require BPPR to have a pre-petition

12

interest in property in order to be able to perfect its security after the petition is filed. In 229 Main St., 262 F.3d at 14, the U.S. Court of Appeals for the First Circuit defined "interest in property," as that term is used in § 362(b)(3), to mean "unequivalent to, and broader than, the term 'lien.'" Id. at 13. In other words, a party may have an interest in the property that is not necessarily tantamount to a lien.  In a subsequent appellate case, Soto-Rios, dealing precisely with an unrecorded but presented mortgage deed before Puerto Rico's Registry of Property, the court stressed that "our primary focus is whether Banco Popular gained a pre-petition property interest in substance and scope that is superior to that of a bona fide purchaser or a judicial lien holder in accord with sections 362(b)(3) and 546(b)(1)(A)." Soto-Rios, 662 F.3d 117.

BPPR argues: (1)it presented the Mortgage Deed two years prior to the bankruptcy petition; (2)the presentment of the Mortgage Deed created an interest in the real property; and (3) Puerto Rico Mortgage Law and Law 216 which authorize the recording of a lien have a relation back provision and fit within the contours of § 546(b). In support of its position, BPPR cites Tosado v. Banco Popular de P.R. (In re Soto-Rios), 420 B.R. 57 (Bankr. D.P.R. 2009), aff'd sub nom. Soto-Rios v. Banco Popular de P.R. (In re Soto-Rios), 662 F.3d 112 (1st Cir. 2011), wherein the bankruptcy

court determined that the mortgage deed that was presented pre-petition but unrecorded in the Registry of Property at the time of the bankruptcy petition coupled with the relation back provision of Article 53 of the P.R. Mortgage Law, P.R. Laws Ann. tit. 30, § 2256, rendered the creditor a secured party.

We conclude that BPPR satisfied the interest in property prong required in both §§ 362(b)(3) and 546(b)(1) due to the mere presentation of the Mortgage Deed two years before the filing of the petition.  As discussed in the leading case of Soto-Rios, the presentation of the mortgage deed at the Registry of Property is the catalyst for the recordation process in Puerto Rico.  Under Article 53 of the P.R. Mortgage Law, P.R. Laws Ann. tit. 30, § 2256, "[p]resentment, as the decisive act for securing rank provided notice to the public, including to any bona fide purchaser, of the parties' mortgage transaction and the acts to preserve priority."  Soto-Rios, 662 F.3d at 122.  When the document is actually recorded in the Registry of Property, it relates back to the moment of its presentation.  P.R. Laws Ann. tit. 30, § 2256; Soto-Rios, 662 F.3d at 121-122; Perez Mujica, 457 B.R. at 187. BPPR presented its Mortgage Deed before the filing of Debtors' bankruptcy case, thereby acquiring an interest in property.

Debtors point out that under Puerto Rico Mortgage Law the Mortgage Deed is defective because the mortgagor does not appear as

14

the registered property owner of the real property that BPPR is attempting to encumber.  However, the courts have found that the presentation of the document in the Registry of Property prior to filing bankruptcy relief gives the holder an interest in the property even though there may be known or alleged defects in the Registry of Property.  Perez Mujica, 457 B.R. at 187) ("The court concludes that the mortgage creditor had a pre-petition property interest, but had knowledge of the expiration of the registry entry for deed … due to the public nature of the information in the Property Registry."), aff'd Perez Mujica, 2013 WL 1408766 at 8(The court found that the bank had properly shown that it has an interest in property, as opposed to a lien because the record shows that the bank has been unable to perfect the lien on two grounds.); In re Feliciano Alvarado, 463 B.R. 200, 211 (D.P.R. 2011) (the court found that the creditor had a potential secured claim and remanded the case for further proceedings to determine whether the creditor would be allowed to perfect its security interest by obtaining a certification from the Registry of Property regarding the recordation and presentation history).

In the instant case, both parties admit that the pre-petition presentation of the Mortgage Deed was actually recorded by the Registrar after the petition was filed even though there is lacking successive chain of title in the Registry of Property.

15

Nevertheless, the presentation of the Mortgage Deed in the Registry of Property provides an interest in property to BPPR under §§ 362(b)(3) and 546(b)(1), although not necessarily a valid lien over the property.  Perez Mujica, 457 B.R. at 187.

### 2.    Perfection

As to second requirement for the exception of the automatic stay to apply, BPPR must establish the existence of "any act to perfect, or to maintain or continue the perfection, of an interest in property" under § 362(b)(3). "[U]nder Puerto Rico law, the registration is a 'constitutive' act for a mortgage, and without the existence of a mortgage, a creditor only has an unsecured personal obligation regarding the underlying debt." Soto-Rios, 662 F.3d at 121.  The definition of "constitutive" is: "(1) Making a thing what it is; essential and (2) Having power to institute, establish, or enact."  The American Heritage® Dictionary of the English Language (4th ed. 2009).

> The civil code sets forth the 'essential requisites' of a mortgage contract, including that a mortgage 'be constituted to secure the fulfillment of a principal obligation. P.R. Laws Ann. tit. 31, §§ 5001, 5002.

16

> Additionally, the civil code prescribes that 'it is indispensable, in order for the mortgage to be validly constituted, that the instrument in which it is created be entered in the registry of property. P.R. Law Ann. tit. 31,§ 5042.' A companion statute under the mortgage law also provides that'[i]n order for voluntary mortgages to be validly constituted' the mortgage must be 'stipulated in a deed' and must 'be recorded in the Property Registry.' P.R. Laws Ann. tit. 30, § 2607.

Soto-Rios, 662 F.3d at 118-19.

Along with the presentation requirement, the mortgage must gain access to the registry by complying with the successive ownership tract ("tracto registral") principle governing our Mortgage Law.  S.J. Credit, Inc. v. Ramirez, 113 P.R. Offic. Trans. 181, 189 (1982).  See also P.R. Laws Ann. tit. 30,§ 2260.[27]  Under this principle, the Registry must keep the link or connection of the acquisitions in a successive and chronological order of

---

[27] Article 57 of the P.R. Mortgage Law, P.R. Laws Ann. tit. 30, § 2260, provides:
> [i]n order to record documents that declare, convey, encumber, modify or extinguish dominion and other real rights on real property, the right of the person who grants them or in whose name the referred transaction or contracts are granted must appear previously recorded. Registration shall be refused if the right is recorded in the name of a person other than the one who is granting the conveyance or lien.  However, resolutions and judgments referred to in §§3761-2777 of this title may be recorded without the previous registration requirement.

17

titleholders to maintain a perfect continuity between all registered acts of purchase, disposition or levy so that it reflects the history of that particular property. LUIS RAFAEL RIVERA RIVERA, DERECHO REGISTRAL INMOBILIARIO PUERTORRIQUEÑO 219 (2d. ed., 2002)[hereinafter Rivera Rivera]; II R.M. ROCA SASTRE, DERECHO HIPOTECARIO 87, 237 (7ma ed., Barcelona, Ed. Bosch, 1979). Successive chain of title must be present or in existence before the mortgage can be recorded and claim a secure footing to a person's real property. P.R. Laws Ann. tit. 30, § 2260. Absent that continuity, the particular right cannot gain access to the Registry. Id. A real property right will be denied recordation in cases where the property right is recorded in the name of a person different from the grantor. Rivera Rivera, supra at 220. In other words, the person executing the mortgage must be the registered title owner or have pending for recordation his title to the property that is to be encumbered by the mortgage.

Although BPPR had presented its Mortgage Deed in the Registry prior to the petition date, it is undisputed that the Purchase Deed was not presented. The Purchase Deed is necessary to attain successive chain of title. According to the Title Search dated January 12, 2012, that was attached by BPPR to its Statement of Uncontested Facts, both Purchase Deed and Mortgage Deed had been presented, via fax, to the Registry of Property but said

presentations had lapsed ("caducaron") for failure to physically deliver the documents to the Registry. Article 34 of the P.R. Mortgage Law, P.R. Laws Ann. tit. 30, § 2154, allows the presentation of documents by facsimile but the documents must be physically presented within 10 days in order to maintain its presentation rank.[28] The Mortgage Deed was later presented to the Registry; however, the Purchase Deed was never presented again. Consequently, the property is currently registered in favor of another party, Torres Ortiz. The Purchase Deed evidencing that the property was sold by the registered owner, Torres Ortiz, to the Debtors is absent from the Registry. This is a fatal defect that prevents the post-petition perfection of the interest in property into a valid recordable lien over the subject property. BPPR's mortgage cannot be validly recorded as a lien in accordance to Article 57 of the P.R. Mortgage Law, P.R. Laws Ann. tit. 30, § 2260. Hence, there is no act to perfect because BPPR failed to do all that is required by Puerto Rico law. Soto-Rios, 662 F.3d at 122; Perez Mujica, 457 B.R. at 189.

---

[28] Article 34 of the P.R. Mortgage Law, P.R. Laws Ann. tit. 30, § 2154 states in part:

> [t]he presentation of documents shall be done personally, by mail or electronic means, and by fax to reserve the entry of presentation, which shall be completed through the physical presentation of the document within 10 working days from the presentation via fax, as provided by regulations.

In the Soto-Rios case, the bank had presented the mortgage deeds two years before the bankruptcy filing but the record was "devoid of any suggestion that the documents were defective in any manner or that Banco Popular bears any responsibility for the lengthy delay." 662 F.3d at 122. The circuit court noted that "[i]n normal course of events anticipated that, absent noticed and uncured defects, recording of the three mortgage deeds would have occurred well before the debtors filed for bankruptcy."  Id. The court further pointed out that the newly enacted Law 216 recognized that there was a widespread delay in the Registry of Property that was not the fault of the applicants.  Id.

Unlike the Soto-Rios case, BPPR in this case had not acted to secure the in personam obligation over the real property by failing to present the Purchase Deed before the bankruptcy proceedings commenced. Thus, BPPR did not take all necessary administrative steps in its power to effectuate due recording of its mortgage as required by 229 Main St., 262 F.3d at 7, and Soto-Rios, 662 F.3d at 122. Consequently, at the time of petition, BPPR is not a holder of a validly secured lien according to Puerto Rico Mortgage Law.

**C. LAW 216**

BPPR insists that it is a holder of a secured claim because its mortgage was recorded in the Registry of Property after the filing of the bankruptcy case by the enactment of Law 216. Both the

20

Debtor and the Trustee argue that the post-petition enactment of Law 216 does not provide a secured status to BPPR.

According to Law 216, "any document presented in the Property Registry by April 30, 2010, shall be deemed to be recorded" except for enumerated exceptions which are not pertinent in this case. Art. 2 of 2010 P.R. Law 216 (effective February 10, 2011). The legislative intent behind Law 216 was to deal with the approximate 600,000 documents that were pending recordation in the Registry of the Property, and to facilitate the recordation of documents that in several instances took over 10 to 15 years for the registrar to be able to review and record.

> Various factors have caused this delay, to wit, the dramatic increase in the presentation of documents during the 1990s; the slow implementation of modern computerized systems, the complexity of the documents; and above all, the serious disproportion between the human and fiscal resources allocated to the Property Registry and the function it carries out within our society.

2010 P.R. Laws No. 216 at 2.

The delay in the recordation process impedes the mortgage "loans from having actual guarantees, which renders access to capital and consequently, economic growth more difficult." Law 216's Statement of Motives, 2010 P.R. Laws No. 216 at 2; Sanchez Diaz v. Estado Libre Asoc., 181 D.P.R 810,826-827 (2011). The delay

21

also "jeopardizes the legal process regarding real property and impairs the rights of citizens." Law 216's Statement of Motives. As a result of this situation, Law 216 passed as a temporary measure.

After the law went into effect, the Mortgage Deed was recorded post-petition despite the fact that there was a "missing link" in the chain of registered title.  However, Law 216 does not save BPPR from the inevitable conclusion that there is a defect in the recordation which prevents BPPR from having a valid registered lien on the property.

As expressed above, it is undisputed that at the moment of the filing of the petition the purported Mortgage Deed was presented by BPPR at the Registry of Property without presenting the Purchase Deed and that the mortgage could not be validly recorded in accordance to local law. Failure to present the Purchase Deed previous to the presentation of the Mortgage Deed necessarily results in the lack of successive chain of title.  Without successive record, the mortgage lien may not be validly recorded in accordance to Article 57 of the P.R. Mortgage Act of 1979, P.R. Laws Ann. tit. 30, § 2260.

Although this Law was enacted in order to eliminate the backlog, ease the workload at the Registry and facilitate its modernization, it does not invalidate or leave without effect the

22

general principles that encompass the system of the Registry and Puerto Rico Mortgage Law. For that reason, Article 7 of Law 216 establishes that "[r]ecords made in accordance with this Act shall be deemed to be correct."  2010 P.R. Laws No. 216 at 5; 30 L.P.R.A. § 1826.  However, "[a]ny error shall be corrected pursuant to Act No. 198 of August 8, 1979, as amended, known as the 'Mortgage and Property Registry Act'; and the Regulations to Enforce the Mortgage and Property Act, Regulations No. 2674 of July 13, 1980, as amended, or any subsequent Regulations."  Art. 7 of Law 216.  See also Art. 11 of the Emergency Regulation for the Execution of Act 216 of December 27, 2010. Law 216 creates, in essence, a rebuttable presumption of valid recordation.

BPPR argues that it is able to correct the defect after the filing of the petition because if the Registrar had issued a notice of defect it would have sixty (60) days to cure by simply presenting the Purchase Deed in the Registry.

Law 216 in effect abolished the requirement of having the Registrar to review documents (known in Spanish as "calificar") that were pending inscription on or before April 30, 2010. Consequently, none of the Registrars will be issuing any notices of defect for documents that fall under Law 216's purview.  In fact, according to the Certification from the Registry of Property issued on March 21, 2011, for the property in question, the Registrar

23

proceeded to record the Mortgage Deed by operation of law on the same date that she issued the Certification without issuing a notice of defect.

Once the bankruptcy petition is filed, the automatic stay prevents BPPR from presenting the Purchase Deed in the Registry. If BPPR had exercised due diligence by presenting the Purchase Deed when it presented the Mortgage Deed then it would be entitled to have its mortgage recorded post-petition under § 362(b)(3). Because the Purchase Deed was left out of the Registry at the time of the filing of the petition, Debtor has rebutted the presumption that the Mortgage Deed was validly recorded and BPPR cannot use Law 216 as a shield.

BPPR is unable to use Article 69.1 of the P.R. Mortgage Regulation to harmonize the presented Mortgage Deed by subsequently presenting the absent Purchase Deed.  This argument was similarly dealt with in the bankruptcy court's decision of Perez Mujica, 470 B.R. 257, 255-256. In a motion for reconsideration filed by a creditor bank, the bankruptcy court rejected the application of Article 69 of the P.R. Mortgage Law because the presentation entry of the document lapsed when the defects notified on it remained uncorrected within the sixty (60) day limitation period provided, P.R. Laws Ann. tit. 30, § 2272.  Perez Mujica, 470 B.R. at 256.

Similarly, in our case, the presentation entry of the Purchase

24

Deed by fax expired when the Purchase Deed failed to materialize in the offices of the Registrar within 10 days of the presentation via fax mandated in Article 34 of the P.R. Mortgage Law, P.R. Laws Ann. tit. 30 § 2154. The interrupted successive chain of title in the Registry invalidates the recordation that occurred by operation of Law 216.

In light of the above, the court concludes that the exception to the automatic stay does not apply because BPPR failed to prove an act to perfect, maintain or continue the perfection.[29] The court holds that BPPR does not have a validly perfected mortgage lien as a result of the missing link in title ownership, thereby resulting in BPPR holding an unsecured claim under Puerto Rico's Mortgage Law, Law 216, sections 362(b)(3) and 566(b)(1)(A).

**D. The Timeliness of BPPR's Proof of Claim**

We now turn our attention to the issue of whether the unsecured claim of BPPR was timely filed. Both Debtor and the Chapter 13 Trustee contend that BPPR's claim should be disallowed because it was filed after the bar date elapsed.

The deadline to file unsecured claims was January 4, 2011. BPPR's claim number 4 was filed on August 19, 2011, eight (8) months after the bar date elapsed; and thus, was untimely filed.

---

[29] There is no need to address the remaining prong under § 546(b). Neither is it necessary to address Debtors' arguments of voidable post-petition transfer under § 549 nor avoidable preferential transfer under § 547(b) alleged in the Amended Complaint.

25

Pursuant to Fed.R.Bankr.P. 3002(c) and 9006(b)(3), the court does not have discretion to enlarge the time period to file an unsecured claim in a Chapter 13 case, unless one of the exceptions in Rule 3002(c) applies.  In re Gardenshire, 209 F.3d 1145 (9th Cir. 2000); In re Greenig, 152 F.3d 631 (7th Cir. 1998); In re Quinones, 2011 Bankr. LEXIS 727 (Bankr. D.P.R. Mar. 2, 2011). None of the exceptions are applicable.  Accordingly, BPPR's claim number 4 is disallowed in its entirety.

**E. Violation of the Automatic Stay**

Since the exception of the automatic stay does not apply, Debtors assert that BPPR's willfully violated the automatic stay by filing a secured claim in the legal case and a "false" secured claim "under clear and evident knowledge of the absence of a secured status."[30]  They further allege that by filing of its claim, BPPR performed an act to enforce a lien, created post-petition, against property of the estate prohibited by § 362(a)(4)-(5).

BPPR argues that Debtors' cause of action for violation of the automatic stay fails because the post-petition recordation of the Mortgage Deed was caused by Registry and by virtue of the enactment of Law 216, not by any inducement on the part of BPPR.

The mere filing of a proof of claim does not constitute a

---

[30] Plaintiffs' Motion for Summary Judgment at 12 (Docket No. 23).

violation of the automatic stay as determined by the U.S. Bankruptcy Appellant Panel for the First Circuit in Knowles v. Bayview Loan Servicing, LLC, (In re Knowles), 442 B.R. 150, 160 (B.A.P. 1st Cir. 2011).  It is not an act against a debtor.  Id. The Bankruptcy Code allows for the filing of the proofs of claim by creditors so that they can participate in the bankruptcy process. Id.; See Zotow v. Johnson (In re Zotow), 432 B.R. 252, 261 (B.A.P. 9th Cir. 2010) (while the automatic stay prevents creditor action against the debtor it fosters creditor participation in the bankruptcy case). The filing of proof of claim merely indicates the creditor's desire to participate in bankruptcy process.  Generally, if a debtor disagrees with the amounts expressed in the proof of claim, debtor is free to object to the same.  Although the filing of a claim may be construed as an act against the estate, the Bankruptcy Code allows for such an action. In addition, BPPR did not register the Mortgage Deed after the filing of the bankruptcy case; it was the Property Registrar who recorded the lien as a result of the passage of Law 216.  Therefore, the Court holds that there is no basis for finding a willful violation of the automatic stay on behalf of BPPR for filing a proof of claim and for the post-petition recordation of its mortgage by the Registry of Property.

Regarding the accusation of filing a false claim because BPPR had clear and evident knowledge of the absence of a secured status, the court rejects Debtor's argument because "[t]he effects of the new law have not been fully litigated … in Puerto Rico."  Soto-Rios, 662 F.3d at 114 n.1.  We have found very few federal cases on Law 216 and much less at the local level.  There are no Puerto Rico Supreme Court cases and only a few appellate cases, which are not applicable to resolve the issue that was raised in the cross motions.  BPPR cannot be penalized when the law in this area is developing.

### V. CONCLUSION

In summary, the Court holds that BPPR does not hold a secured claim because the Mortgage Deed was invalidly recorded after the filing of the petition.  Therefore, BPPR's claim is unsecured.  Since the unsecured claim was untimely filed, it is disallowed in its entirety.  There was no automatic stay violation for filing an alleged secured claim or an alleged false claim.

### ORDER

**WHEREFORE, IT IS HEREBY ORDERED** that plaintiffs Leandro Rafael Rodriguez Ramos and Nelimar Reyes Torees's motion for summary judgment (Docket No.23) is granted and denied in parts.  It is

28

granted regarding the unsecured status of defendant Banco Popular de Puerto Rico's mortgage claim and Proof of Claim number 4 is disallowed in its entirety because it is untimely filed. It is denied as to the request for imposition of liability for the willful violation of the automatic stay and imposing liability, sanctions and/or attorney's fees for the filing of a falsely secured claim.

Banco Popular de Puerto Rico's motion for summary judgment (Docket #16) is denied and granted in parts. It is denied as to the following: 1) with respect to the secured status under the exception to the automatic stay provided under 11 U.S.C. §§ 362(b)(3) and 546(b)(1)(A), Puerto Rico's Mortgage Law and Law 216; 2) ordering Debtors to pay legal fees and costs to BPPR in the amount of $7,000.00 for defending its claim pursuant to the terms of the note and the Mortgage Deed. BPPR's motion for summary judgment is granted with respect to denying Debtors' request for damages for violations of the automatic stay.

**SO ORDERED.**

San Juan, Puerto Rico, this 24th day of May, 2013.

BY THE COURT:

*Mildred Cabán*

MILDRED CABAN FLORES
U.S. Bankruptcy Judge

29